2025 IL App (2d) 240267-U
No. 2-24-0267
Order filed May 27, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE of DOLORES BRAZAS, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | No. 21-P-214 |
| | ) | |
| | ) | Honorable |
| (Wesley Brazas, Jr., Petitioner-Appellant, v. | ) | Joseph M. Grady, |
| Jefferson J. Brazas, Respondent-Appellee). | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Kennedy and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in (1) appointing Jefferson Brazas as executor of the estate in accordance with the express terms of the will; and (2) awarding attorney's fees to Scott Richmond of Ariano, Hardy, Ritt, Nyuli, Richmond, Lytle & Goettel, P.C. for his work representing the estate. The trial court did not violate Wesley Brazas's due process rights in the underlying proceedings. Affirmed.

¶ 2    This appeal arises out of a contentious probate case, wherein Petitioner-Appellant, Wesley Brazas, Jr., caused significant hardship and delay with his incessant, and often unnecessary, filings. He continues that pattern on appeal. For the following reasons, we affirm the judgment of the circuit court of Kane County.

¶ 3                                I. BACKGROUND

¶ 4                    McHenry County Case No. 19-PR-274

¶ 5    As background, prior to Dolores Brazas's death, Wesley Brazas filed a petition for guardianship over Dolores. Sandra Kerrick, the guardian *ad litem* (GAL) appointed by the court, concluded that a guardian should be appointed over Dolores as she was mentally incompetent and unable to manage her own affairs.

¶ 6    Dolores indicated to the GAL that under no circumstances should Wesley be appointed guardian. If she needed a guardian, she would like Jefferson appointed. Wesley, throughout the guardianship proceedings, argued that Jefferson was taking money from Dolores for his own personal use. The GAL investigated these claims, and ultimately dismissed them, finding the claims to be false: "Wesley was driven by a fanatic obsession with conducting litigation by himself, *pro se*, in order to financially ruin his brother, Jefferson, with phony charts of missing money which Wesley prepared."

¶ 7    The GAL also submitted a supplemental report to the court, which read as follows:

"[I]t appears to me that the driving force of this litigation is for Wesley to file suit against Jeff and handle it all by himself.

I have observed Wesley in the hallway outside of the court room in a rage against Jeff-- demanding money. At the present time, it takes all of Dolores's monthly income to pay Hearthstone for her care. Jeff has been writing the checks for Dolores for approximately two years. There is not an extra penny to be spent on Jeff at this time. Jeff has agreed that it is necessary to sell Dolores's home to raise the funds to support her.

Wesley is absolutely adamant that he must be appointed the guardian. Illinois law provides that a factor to be considered is the 'conduct of the proposed guardian…' *In Re Estate of Kusmanoff*, 2017 IL App (5th) 160129, ¶ 95. I decided to investigate Wesley's

legal background to determine his suitability for serving as guardian by his prior conduct. I discovered that he has a background of being extremely litigious and representing himself in court, as well as having angry relations with others who crossed his path, not the least of which is his departure from the law firm previously representing him in this case.

Wesley has personally handled at least six civil appeals in the Appellate Court, *pro se*, and filed at least four petitions for leave to appeal to the Supreme Court ***. It appears that Wesley wants to control his mother's home and extra acreage to protect his own adjoining home which has serious lien problems arising from judgments against Wesley.

Mrs. Brazas' home and Wesley's home are adjoining properties near Big Timber Road in rural Hampshire. Mrs. Brazas' home and acreage are on Big Timber. Wesley's home is just off of Big Timber. During the 1990's, Wesley had an easement to cross over his mother's property to access the road. Coincident with his divorce, Wesley conveyed the easement back to his parents to land lock his home. According to Jeff Brazas, the reconveyance was to avoid foreclosure by Jeff Rifken.

* * *

I surmise that his mother has a general knowledge of his litigation wars while they have been next-door neighbors at least since the 1990s. She apparently reached her own conclusions about the effect of Wesley being appointed her guardian. She does not want Wesley appointed.

In selecting a guardian, the 'court shall give due consideration to the preference of the disabled person but is not bound by that preference.' *In Re Estate of McHenry*, 2016 IL App (3d) 140913, ¶ 114. In fact, the Probate Act has a very low bar for considering the preference of a minor of 14 years old. He may nominate his own guardian. 755 ILCS 5/22-

5(c). The medical evaluation by Dolores' physician states that Dolores is capable of selecting her own guardian, and she does not want Wesley."

¶ 8 The guardianship case continued until Dolores's death, largely due to Wesley's litigiousness.

¶ 9                                        Kane County Case No. 21-P-214

¶ 10 Dolores Brazas passed away on March 16, 2021. Upon her death, she left a will and a trust, both dated May 27, 2009. She was survived by her six children: Jefferson Brazas, Wesley Brazas, Jr., Christopher Brazas, Donna J. Laut, Judith L. Vincent, and Jeanne M. Cagen.

¶ 11 On April 13, 2021, Jefferson, through the firm Ariano, Hardy, Ritt, Nyuli, Richmond, Lytle & Goettel, P.C., filed a petition for probate of will and letters testamentary. He also filed an affidavit of heirship and an affidavit of eligibility of representative, certifying that he was at least 18 years of age or older, was a resident of the United States, was of sound mind, was not adjudged to be a disabled person, and had not been convicted of a felony.

¶ 12 On April 26, 2021, the Clerk of the Circuit Court of Kane County returned the will copy without processing. The correspondence indicated that an order was required to permit a copy to be substituted as the original.

¶ 13 After a hearing on May 11, 2021, the transcript of which is not included in the record on appeal, Jefferson was appointed as temporary administrator of the estate, over Wesley's objection. Wesley was also given time to respond to the petition for probate. Subsequently, on June 1, 2021, Wesley (through his first attorney, Kevin Barry), filed a motion to dismiss the petition, arguing that the petition was insufficient in that it did not indicate that petitioner was attempting to probate a lost or destroyed will.

¶ 14    In response to Wesley's motion to dismiss, Jefferson then filed a petition for probate of a copy of a lost will and letters testamentary to issue. At the status hearing on June 25, 2021, the court ordered that Jefferson was to remain the temporary supervised administrator of the estate.

¶ 15    On October 12, 2021, Wesley filed a *pro se* response to the petition for probate of a copy of a lost will and letters testamentary to issue. In it, he stated that Jefferson was unqualified to be executor because (1) he had taken tens of thousands of dollars from Dolores prior to her death; (2) he failed to have maintenance done to Dolores's property; and (3) he improperly obtained power of attorney over Dolores prior to her death.

¶ 16    The matter proceeded to hearing on the petition for probate of a lost will on October 3, 2022. No transcript of the hearing was incorporated into the record on appeal. However, according to a minute order entered that same day, Raymond Witaske, Mary Jo (last name not included in record), Jefferson Brazas, Wesley Brazas, and Sandra Kerrick were all called as witnesses.

¶ 17    A copy of the lost will was entered into evidence as petitioner's exhibit no. 1. It read as follows:

> "I, DOLORES M. BRAZAS, of the Township of Hampshire, County of Kane, and State of Illinois, being of sound and disposing mind, memory and understanding, do hereby make, publish and declare this to be my Last Will and Testament. I hereby revoke any and all prior Wills, Codicils and Testamentary Dispositions made by me at any time heretofore.
>
> FIRST: I hereby state that on the 27th day of May, 2009, I executed a Declaration of Trust identified as THE DOLORES M. BRAZAS DECLARATION OF TRUST, dated May 27th, 2009, DOLORES M. BRAZAS, Trustee. I hereby ratify and confirm said Declaration of Trust and all the distributive provisions therein, which was made by me before execution of this Will.

SECOND: I direct that my Executor hereinafter named shall refer to and follow my directions as set forth in said Declaration of Trust regarding the payment of all of my final expenses and expenses of administration of my Estate.

THIRD: All of the rest, residue and remainder of my estate, of whatsoever character and wheresoever situated, not previously transferred by me to the Trustee of THE DOLORES M. BRAZAS DECLARATION OF TRUST dated May 27th, 2009, I hereby devise and bequeath to the Trustee under the aforementioned Trust. Said property is to be added to and commingled with the trust property of that Trust and to be held, administered and distributed by the Trustee in accordance with the provisions of that Trust Agreement as it then exists at the time of my death, including any amendments thereto.

FOURTH: I hereby nominate and appoint my son, JEFFERSON J. BRAZAS, to be Executor of this my Last Will and Testament. In the event that he is unable or declines to serve as the Executor, I hereby nominate and appoint me son, WESLEY JOSEPH BRAZAS, JR., as Successor Executor.

In the event that he is unable or declines to serve as the Successor Executor, I hereby nominate and appoint my daughter, JUDITH L. VINCENT as Alternate Successor Executor.

I direct that they be not required to furnish surety or other security on the bond for the faithful performance of their duties as Executor, Successor Executor or alternate Successor Executor.

FIFTH: If probate is either necessary or required by law, the administration of my estate shall be independent of the supervision of any Court.

I give to my said Executor and/or Successor Executors the following powers and discretions in each case to be exercisable without authorization by any Court.

(a) To sell at public or private sale, all or part of the real or personal property of my estate;

(b) To execute and deliver any deeds, contracts, mortgages, bills of sale or other instruments necessary or desirable for the exercise of their powers and discretions;

(c) To settle claims in favor of or against my estate;

(d) To file, settle and compromise with the Internal Revenue Service all necessary Income and Estate Tax Returns without incurring any personal liability whatsoever for so doing, any and all such personal liability being hereby waived. Further, I direct that my Executor and/or Successor Executors shall make such elections under the tax laws as he deems advisable.

(e) To value my estate in order to make allocations or distribution, and no action taken by my Executor and/or Successor Executors to this power shall be subject to question by any beneficiary.

(f) To transfer to the Trustee under the provision of my Declaration of Trust, all remaining items, assets, and instruments and obtain full receipts therefore.

(g) Further, I give said Executor and/or Successor Executors full power and authority to manage my entire estate in every respect as they may see fit, and their actions therein shall be subject to question by no one."

¶ 18    Jefferson also entered into evidence Dolores's declaration of trust, and two guardian *ad litem* reports drafted by Sandra Kerrick in case no. 19-PR-274.

¶ 19    On October 4, 2022, the trial court entered an order admitting the will to probate and appointing Jefferson as executor of Dolores's estate, in accordance with the express terms of Dolores's will. Letters of office issued the following day. Wesley filed a motion to reconsider on October 31, 2022, arguing that the orders must be vacated as no hearing was held to determine if Jefferson was qualified to act as executor. The trial court denied the motion to reconsider on March 1, 2023.

¶ 20    There were two main issues to be dealt with in Dolores's estate: Dolores's real property at 44W369 Big Timber Road, Hampshire, Illinois; and a claim filed by Alden Terrace of McHenry Rehabilitation and Health Care Center (hereinafter, "Alden Terrace").

¶ 21                    *44W369 Big Timber Road, Hampshire, Illinois*

¶ 22    On June 25, 2021, Jefferson, as temporary supervised administrator of the estate was granted leave to access Dolores's real property and prepare it for sale. On July 29, 2021, Jefferson, as temporary supervised administrator, was granted leave to enter into a listing agreement with a realtor to sell Dolores's home. The heirs, including Wesley, were given the right to make an offer on the property.

¶ 23    On September 3, 2021, Jefferson filed a motion for leave to obtain appraisal for estate property and to record an easement.[1] Wesley filed a response to this motion, objecting to or denying nearly every paragraph, and ultimately asking the court to deny both the appraisal and the

---

[1] Wesley owns property immediately adjacent to Dolores's property. Wesley's property only has ingress and egress over a driveway on and across Dolores's property. To prevent Wesley's property from being landlocked, and to prevent a future third party buyer from being subject to a prescriptive easement, Jefferson sought to record an easement.

recording of the easement. Over Wesley's objection, the trial court granted Jefferson's motion on September 15, 2021.

¶ 24    On November 3, 2021, Jefferson filed a motion for approval of real estate contract, seeking to sell Dolores's property for a total sum of $405,000, which was above the appraised value. The motion was granted on November 10, 2021, and the heirs' right to make an offer on the property was terminated.

¶ 25                                *The Alden Terrace Claim*

¶ 26    Alden Terrace filed a claim against the estate in the amount of $13,553.37 on August 6, 2021. Wesley filed a *pro se* motion to dismiss the claim, arguing that the Alden Terrace contract was executed by Jefferson, who did not have valid power of attorney. Additionally, he alleged that Alden Terrace was negligent in their care of Dolores so therefore, the claim should be dismissed. Alden Terrace responded, arguing that the motion was improper and that the claim should not be dismissed. Wesley's second counsel filed a denial of the Alden Terrace claim on June 28, 2022, and demanded a jury trial in regards to the claim.

¶ 27    The matter was set for a jury trial on December 1, 2022. Prior to trial, the parties reached a settlement agreement wherein the estate would pay Alden Terrace the sum of $6,000 for full and final consideration of their claim.

¶ 28                                *Attorney's Fees and Costs*

¶ 29    On May 23, 2022, attorney for Jefferson Brazas, as temporary supervised administrator of the estate of Dolores Brazas, filed its first petition for attorney's fees pursuant to 755 ILCS 5/27-2(a) (West 2024), seeking fees and costs in the amount of $16,760.42. The petition was granted on June 14, 2022, over Wesley's objection.

¶ 30    On May 1, 2023, a second petition for attorney's fees and costs was filed, seeking fees and costs in the amount of $14,798.28. The trial court granted the petition on May 9, 2023.

¶ 31    On November 20, 2023, a third petition for attorney's fees and costs was filed, seeking fees and cost in the amount of $3,398.31. The trial court granted the petition on December 1, 2023.

¶ 32                                *Closing of the Estate*

¶ 33    On November 20, 2023, Jefferson as executor of the estate, filed a petition to approve final accounting and close the estate. All outstanding debts had been resolved and there remained no other outstanding issues.

¶ 34    The trial court entered an order closing the estate on December 1, 2023. The total sum of $101,074.32 was distributed to the heirs, with $22,500 being held in reserve in the estate bank account for purposes of defending an appeal and for preparation of the final tax return of the estate.

¶ 35    Wesley filed a motion to reconsider on December 21, 2023, but failed to actually set the motion for hearing. Jefferson, as executor of the estate, filed a motion to set the matter for hearing on January 16, 2024. On March 11, 2024, the trial court denied Wesley's motion to reconsider.

¶ 36    Throughout the unnecessarily long lifetime of the case, Wesley filed an excessive number of documents that had very little bearing on the probate of Dolores's will, including: a petition to issue a citation to discover assets against Kathleen Brazas, a petition to issue a citation to discover assets against Jefferson Brazas, a petition for letters to collect, multiple petitions for rule to show cause against Jefferson Brazas, a motion of substitution of judge for cause that was ultimately denied as the motion had no basis in law, and numerous subpoenas (including one to Sandra Kerrick, GAL in case no. 19-PR-274, which was ultimately quashed). These filings required full briefing schedules and transformed a simple probate matter into a nearly three-year long affair. After the matter finally concluded, Wesley filed his notice of appeal on April 10, 2024.

¶ 37                                    II. ANALYSIS

¶ 38    In his form notice of appeal, Wesley lists the following dates of orders being appealed: March 11, 2024; December 3, 2023; and November 30, 2022. In his brief, he makes three arguments: (1) the trial court erred in appointing Jefferson as administrator of the estate of Dolores; (2) the trial court erred in awarding attorney's fees and costs to Scott Richmond of Ariano, Hardy, Ritt, Nyuli, Richmond, Lytle & Goettel, P.C.; and (3) the trial court violated his due process rights.

¶ 39    We first address Wesley's argument that the trial court erred in appointing Jefferson as executor of the estate of Dolores. The trial court entered an order appointing Jefferson as temporary administrator on May 11, 2021, and an order appointing Jefferson as executor on October 4, 2022. Wesley takes issue with both orders.

¶ 40    As an initial matter, we have an independent duty to examine our jurisdiction. *West Bend Mutual Insurance Company v. TRRS Corporation*, 2019 IL App (2d) 180934, ¶ 13. Appellant claims we have jurisdiction pursuant to Illinois Supreme Court Rule 301. Appellee claims we have jurisdiction pursuant to Illinois Supreme Court Rule 303(a). However, regarding this issue, we find Illinois Supreme Court Rule 304(b)(1) to be applicable. Illinois Supreme Court Rule 304(b)(1) states that "[t]he following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule: (1) A judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." Ill. Sup. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). Examples of such orders include an order admitting or refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim. Ill. S. Ct. R. 304, Committee Comments (rev. Mar. 8, 2016). "Orders within the scope of Rule 304(b)(1), even though entered before the final settlement of estate proceedings, *must* be appealed within 30 days of entry or be barred." *In re Estate of Thorp*, 282 Ill. App. 3d 612,

616. As Wesley failed to appeal either order appointing the temporary administrator or executor within 30 days of entry, his appeal is barred.

¶ 41    Notwithstanding jurisdiction, Wesley appeals orders resulting from hearings that occurred on May 11, 2021, and October 3, 2022. He has failed to incorporate those transcripts into the record. Wesley, as the appellant, has the burden to present a sufficiently complete record of the proceedings to support a claim of error. *Foutch v. O'Bryant*, 459 N.E. 2d 389, 391-392. In his failure to do so, we will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Id.*

¶ 42    We do note that Wesley filed a motion with this court on November 12, 2024, requesting, among other things, that certain missing transcripts (including October 3, 2022) be added to the record. We granted his motion in part, allowing him time to supplement the record with the missing transcripts. He failed to do so. Further, on November 29, 2022, Wesley indicated to the trial court that he was in possession of certain transcripts, including the transcript from October 3, 2022. The trial court accepted the transcript for review and then returned it to Wesley the following day. Given the fact Wesley was apparently in possession of at least one of the missing transcripts, we are not inclined to forgive his failure to properly supplement the record on appeal.

¶ 43    We now turn to Wesley's second argument—that the trial court erred in awarding attorney's fees and costs. Wesley argues that the award of attorney's fees and costs was in error because (1) Scott Richmond failed to file a standard appearance form and therefore violated Illinois Supreme Court Rule 13; (2) Scott Richmond presented motions that were unsigned by Jefferson and did not have Jefferson appear at the hearings for said motions, therefore violating Illinois Supreme Court Rules 3.4 and 3.7; and (3) Scott Richmond was operating under a conflict of interest as he simultaneously represented Jefferson and the estate.

¶ 44    Wesley did not articulate the appropriate standard of review for this argument, in violation of Illinois Supreme Court Rule 341(h)(3). Although we disagree with appellee's suggestion that this violation should render Wesley's arguments forfeited, we remind Wesley that *pro se* litigants *must* comply with the same rules and are held to the same standards as licensed attorneys. *Zemater v. Village of Waterman*, 2020 IL App (2d) 190013, ¶ 19.

¶ 45    The decision of whether to award attorney's fees and costs lies within the sole discretion of the probate court. *In re Estate of Kirk*, 292 Ill. App. 3d 914, 923. We will not disturb that decision absent an abuse of discretion. *Weber's Estate v. Hampshire*, 81 Ill. App. 3d 257, 258.

¶ 46    Wesley's argument regarding Scott Richardson's failure to file a standard appearance form is raised for the first time on appeal. Issues not raised in the trial court are deemed waived. *Haudrich v. Howmedia, Inc.*, 169 Ill. 2d 525, 536.  Waiver aside, Illinois Supreme Court Rule 13 reads, in relevant part, as follows: "*If* a written appearance is filed, copies of the appearance shall be served in the manner required for the service of copies of pleadings. *** An attorney shall file a written appearance *or other pleading* before addressing the court***." Ill. S. Ct. R. 13 (eff. Jan. 1, 2023). Read in conjunction, the rule allows an attorney to file a written appearance or another pleading. Here, Scott Richmond's firm filed a petition for probate of will and letters testamentary, in other words, a pleading, on April 13, 2021. As such, Scott Richmond and his firm complied with Illinois Supreme Court Rule 13 and Wesley's argument fails.

¶ 47    Next, Welsey argues that Scott Richmond presented motions that were unsigned by Jefferson and did not have Jefferson appear at the hearings for said motions, therefore violating Illinois Supreme Court Rules 3.4 and 3.7. Wesley does not support this argument with any citations to the record or to pertinent authority. We have no idea what motions Wesley alleges were

improper. Accordingly, he has forfeited this argument on appeal. See *People v. Urdiales*, 225 Ill. 2d 354, 419-420.

¶ 48    Wesley lastly argues that Scott Richmond was functioning under a conflict of interest, and therefore, should not have been awarded attorney's fees and costs. He argues that Scott Richmond represented Jefferson personally, in addition to representing the estate. Wesley provides no citation to the record showing where this alleged representation of Jefferson occurred. "The appellate court is not merely a repository into which the appellant may dump the burden of argument and research." *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459. Regardless, it does not appear that Scott Richmond ever appeared on behalf of Jefferson personally. Scott Larson, an attorney from another firm, represented Jefferson personally after Wesley filed a petition to issue a citation to discover assets. We find no conflict of interest.

¶ 49    Confusingly, in his attorney's fees and costs argument, Wesley also argues that the circuit court erred in quashing his subpoena for guardian *ad litem* records of Sandra Kerrick. It is unclear how this relates to the propriety of an award of attorney's fees and costs. Regardless, Sandra Kerrick work was completed in 19-PR-274. Her work had no bearing on the probate case. Accordingly, Wesley's argument fails.

¶ 50    Finally, we address Wesley's due process argument. His argument centers around three particular court dates: (1) June 28, 2022, where Judge Grady purportedly said that he was not going to appoint Wesley as administrator of the estate; (2) May 11, 2022, where Judge Grady appointed Jefferson as temporary administrator; and (3) October 3, 2022, where Judge Grady appointed Jefferson as executor of the estate.

¶ 51    Wesley has not provided a transcript for any of the hearings he takes issue with. Wesley, as the appellant, has the burden to present a sufficiently complete record of the proceedings to

support a claim of error. *Foutch*, 459 N.E. 2d at 391-392. As he has failed to do so, we will presume that the orders entered by the trial court were in conformity with the law and had a sufficient factual basis. *Id.*

¶ 52     Specifically, regarding the June 28, 2022, court date—Wesley did provide an affidavit he filed on November 22, 2022, in support of his motion for substitution of judge. However, the affidavit merely states that Judge Grady said that he was not going to appoint Wesley as administrator of the estate on June 28, 2022. Without more, we have no way to determine the context in which this statement was made. Further, as discussed above, on November 29, 2022, Wesley indicated to the trial court that he was in possession of the transcript from June 28, 2022. We see no reason why he would have been unable to supplement the record with a transcript that was self-admittedly in his possession.

¶ 53     As a closing note, we observe that most, if not all, of Wesley's filings below, as well as his arguments on appeal, show Wesley's fundamental lack of knowledge of how the court system works. While he certainly has the right to represent himself, we reiterate that he does not have the right to do so in a manner which runs afoul of established procedural rules, including Illinois Supreme Court Rule 137. This rule, in relevant part, states:

> "A party who is not represented by an attorney shall sign his pleading, motion, or other document and state his address. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; *that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in*

*the cost of litigation.* *** If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." (Emphasis added.) Ill. S. Ct. R. 137 (eff. Jan. 1, 2018).

We encourage Wesley to be mindful of *all* rules in the future.

¶ 54                                    III. CONCLUSION

¶ 55    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 56    Affirmed.